UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA,

v.                                                   CRIMINAL ACTION NO. 4:15-cr-18

CHARLES BURTON RITCHIE,

and

BENJAMIN GALECKI,

Defendants.

*MEMORANDUM OPINION AND ORDER*

This case is before the Court after Charles Burton Ritchie and Benjamin Galecki ("Defendants") successfully appealed to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") earlier this year. *United States v. Ritchie*, No. 17-4357, 2018 WL 2383017 (4th Cir. May 25, 2018). The Fourth Circuit vacated Defendants' convictions and remanded the matter to this Court to determine whether the barred testimony of an expert witness, Dr. Arthur Berrier, was material and if therefore Defendants' Sixth Amendment rights were violated. *Id.* at *3. For the reasons set forth below, the Court finds that Defendants' Sixth Amendment rights were not violated because Dr. Berrier's testimony was not material.

I.    FACTUAL AND PROCEDURAL HISTORY

Often known by its street name "spice," synthetic marijuana, or synthetic cannabinoids, is a relatively new form of drug. ECF No. 876 at 1–2. From August 2012 to April 2013, Defendants manufactured and distributed spice throughout the United States through their company Zencense Incenseworks, later ZenBio. *Ritchie*, 2018 WL 2383017, at *1. Defendants produced spice that contained two forms of synthetic cannabinoids: XLR-11 and UR-144. ECF

1

No. 876 at 1. XLR-11 and UR-144 have been treated as the same substance throughout this whole litigation. *Ritchie*, 2018 WL 2383017, at *1 n.1.

While XLR-11 and UR-144 were not themselves listed as a controlled substance at the time Defendants were making their spice, the Drug Enforcement Agency ("DEA") determined that these cannabinoids are "analogues" to a controlled substance, specifically JWH-018.[1] *Id.*; ECF No. 876 at 2. Under the Analogue Act, substances that are "substantially similar to the chemical structure of a controlled substance" are similarly prohibited. 21 U.S.C. §§ 802(32); 813. The Drug and Chemical Evaluation Section ("DRE") of the DEA is the body that determines whether a particular substance is an analogue or not. *Ritchie*, 2018 WL 2383017, at *1. DRE may consult the Office of Forensic Sciences to perform tests on substances, but the ultimate authority on determining analogues rests with DRE. *See id.*

Prior to trial, Defendants made a *Touhy* request regarding the testimony of Dr. Berrier.[2] *Id.* at *2. Dr. Berrier is a former Senior Research Chemist with the DEA's Office of Forensic Sciences. Dr. Berrier was at the DEA at the time of the *Touhy* request and during Defendants' two trials. *See* ECF No. 876 at 3–4. On June 21, 2017, after the jury had convicted Defendants, Dr. Berrier was arrested; he then left the agency on January 31, 2018. *Id.* at 4. While at the DEA, Dr. Berrier tested UR-144 against JWH-018 and determined that the substances did not have "substantially similar" chemical structures, meaning he believed they were not analogues. *Ritchie*, 2018 WL 2383017, at *1. The Government opposed Defendant's motion on the grounds

---

[1] Both XLR-11 and UR-144 were scheduled as controlled substances on May 16, 2013. ECF No. 876 at 1.

[2] *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). *Touhy* allows agency employees to refuse to answer a subpoena without fear of being held in contempt if they are prohibited from responding by a superior. *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 272 n.3 (4th Cir. 1999); *see also* 5 U.S.C. § 301 (allowing executive branch agencies to promulgate regulations on, among other things, responding to subpoenas).

2

of deliberative process privilege. *Id.* The Court denied Defendant's motion to call Dr. Berrier. *Id.*

Defendants were tried before this Court twice. The first trial ended in a mistrial because the jury was hung on the issue of whether XLR-11 and UR-144 were analogues. ECF No. 875 at 8. The second trial required the Court to issue an *Allen* charge on the same issue, after which the jury found Defendants guilty on all counts. *Id.*

Defendants appealed their convictions, raising, among other things, the Court's denial of allowing Dr. Berrier's testimony, which Defendants claimed violated their Sixth Amendment right to compulsory process. *Ritchie*, 2018 WL 2383017, at *1. The Fourth Circuit held that the Government had waived privilege with respect to Dr. Berrier's opinions because (1) these opinions were publicly available and (2) the Government had sent Dr. Berrier's conclusions to Defendants as part of its *Brady* material.[3] *Id.* at *3. Noting that Dr. Berrier's testimony is favorable to Defendants, the Fourth Circuit vacated Defendants' convictions and remanded the matter to this Court to determine whether Dr. Berrier's testimony would have been material.

The Court ordered both parties to submit memoranda of law regarding the issue of materiality and other admissible evidence to this point. ECF No. 873 at 2. Both parties have submitted their briefs, and the issue is now ripe for disposition.

## II. LEGAL STANDARD

Defendants claim that their compulsory process rights under the Sixth Amendment were violated because Dr. Berrier was not allowed to testify. Compulsory process rights only apply to "witnesses in [a defendant's] favor." U.S. CONST. amend. VI. In order to show their compulsory process rights were violated, Defendants must at least provide a "plausible showing" that Dr.

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

3

Berrier's testimony "'would have been *relevant* and *material*, and . . . *vital* to the defense.'" *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (quoting *Washington v. Texas*, 388 U.S. 14, 16 (1967)). The Court looks at materiality "in the context of the entire record." *Valenzuela-Bernal*, 458 U.S. at 868.

The testimony at issue must, like all other forms of evidence, be admissible. *See United States v. Ordonez*, 242 F. Supp. 3d 466, 472–73 (E.D. Va. 2017); Fed R. Evid. 402. Materiality in compulsory process caselaw also conforms to the same standards as materiality in *Brady* violations or Federal Rule of Criminal Procedure 15. *See Valenzuela-Bernal*, 458 U.S. at 867–68; *Ordonez*, 242 F. Supp. 3d at 472–73; *United States v. Rosen*, 240 F.R.D. 204, 209 (E.D. Va. 2007); *see also* Fed. R. Crim. P. 15; *Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. Agurs*, 427 U.S. 97, 104 (1976); *United States v. Hajbeh*, 284 F. Supp. 2d 380, 384 (E.D. Va. 2003). This means the testimony must be exculpatory. *See Agurs*, 427 U.S. at 106–07. Testimony that is merely cumulative or duplicitous is not material. *See United States v. Kaixiang Zhu*, 854 F.3d 247, 254 (4th Cir. 2017) (citing *Valenzuela-Bernal*, 458 U.S. at 873)). Finally, materiality exists if there "is a 'reasonable probability' of a different result," or when the barred testimony "'undermines confidence in the outcome of the trial.'" *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)); *United States v. Kaixiang Zhu*, 105 F. Supp. 3d 585, 589 (E.D. Va. 2015); *Rosen*, 240 F.R.D. at 209 (quoting *Valenzuela-Bernal*, 458 U.S. at 874)). Therefore, the Court must find the testimony is (1) admissible, (2) exculpatory, (3) not cumulative, and (4) has a reasonable probability of resulting in a different outcome.

## III. DISCUSSION

As a preliminary matter, the Fourth Circuit has already determined that Dr. Berrier's testimony would have been favorable to Defendants. *Ritchie*, 2018 WL 2383017, at *3. The Court must now determine if the testimony was material, meaning the Court must look at the following: admissibility, cumulativeness, and whether there was a reasonable probability of a different result if this testimony were allowed. The Court will take each issue in turn.

### A. Admissible and Exculpatory

Dr. Berrier's testimony is relevant to Defendants' case. *See* Fed. R. Evid. 401. His testimony also arguably would exculpate Defendants. *Cf. Ritchie*, 2018 WL 2383017, at *3 (holding that Dr. Berrier's testimony was "favorable"). While there are questions regarding Dr. Berrier's ability to be cross-examined, the Court will assume for the sake of argument that Dr. Berrier's testimony may have been admissible and exculpatory, although the Court does not specifically find so.[4]

### B. Cumulative

Defendants state that the main reason they wished to call Dr. Berrier is because he would testify that "UR-144 was not substantially similar in its chemical structure to JWH-018." ECF No. 875 at 3. But Defendants had called two expert witnesses to testify to this fact: Dr. Greg Dudley and Dr. Mitchell Croatt, professors at the University of West Virginia and the University of North Carolina, respectively. ECF No. 876 at 2. Defendants concede that Dr. Berrier "used essentially the same criteria" as Dr. Dudley and Dr. Croatt. ECF No. 875 at 4. In other words, Dr. Berrier's testimony about how the chemical structures were not substantially similar would

---

[4] The Court specifically notes that a sister court struggled to find a way to allow proper cross-examination of Dr. Berrier, given his broad invocation of his Fifth Amendment right against self-incrimination. *See* ECF 876-1 at 32 ("[Dr. Berrier] is essentially immunizing himself from cross-examination regarding bias and prejudice.").

5

have been nearly identical to what Defendants had already produced. Defendants claim that had Dr. Berrier testified they "might not have" called Dr. Dudley and/or Dr. Croatt. *Id.* at 11. The Court does not consider what possible litigation strategies Defendants may or may not have taken; the Court considers Dr. Berrier's testimony "in the context of the entire record," including the two expert witnesses Defendants had called. *See Valenzuela-Bernal*, 458 U.S. at 868.

Defendants also argue that Dr. Berrier would not be cumulative because he would corroborate the methods Dr. Dudley and Dr. Croatt used. ECF No. 875 at 9. However, if Dr. Berrier's only purpose is to support the analysis of two other expert witnesses, who have their own independent credentials and expertise, then that is the epitome of cumulative testimony.

The only difference between Dr. Berrier and the two experts who did testify is that he worked at the DEA. *Id.* at 11. It is unclear if Defendants are also claiming that they would ask Dr. Berrier to testify as an expert witness regarding the DEA and its classification process of analogues. *See id.* If they did, the Court notes that Dr. Berrier worked in the Office of Forensic Sciences at the DEA, which was not in charge of categorizing analogues. That authority rested with DRE. If Defendants truly wanted an expert on the DEA and how it classifies analogues, it would seem to be more relevant and useful to send a *Touhy* request for a current DEA employee at DRE. Dr. Berrier may have a working knowledge of how such classification works, but he was not involved in the actual decision-making process. He only performed a limited function in the process of categorizing analogues. Therefore, having Dr. Berrier testify about the DEA's process and his experience there would only likely serve to mislead the jury about his role in the DEA and his authority to determine analogues.[5] *See* Fed. R. Evid. 403.

---

[5] Defendants also argue that the Government conceded materiality when it produced Dr. Berrier's evidence under *Brady*. *Id.* at 10 n.3. Because *Brady* disclosures happen before trial, the Government takes a broad view: if the evidence is exculpatory, it will be disclosed. U.S. DEP'T OF JUSTICE, JUSTICE MANUAL, 9-5.001(B)(1) (2018). The Government did not concede materiality when it disclosed Dr. Berrier's opinion in the *Brady* material.

6

Given that Defendants were able to call two other expert witnesses who used the same methods as Dr. Berrier, and his former position at the DEA would not provide any new relevant information, the Court finds that Dr. Berrier's testimony, in the context of the entire record, would be merely cumulative.

### C. Reasonable Probability of a Different Result

Because the Court finds that Dr. Berrier's testimony would be cumulative, the Court also finds that his testimony would not have had a "reasonable probability" of changing the outcome of the case. The jury already heard Dr. Dudley and Dr. Coatt discuss their analysis and conclusions that UR-144 was not substantially similar to JWH-018. The jury carefully considered the question, and after an *Allen* charge, decided not to believe Defendants' two experts. A third expert would not have convinced them further. Therefore, the Court finds that Dr. Berrier's testimony would not have resulted in a different outcome.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Dr. Berrier's testimony would have been cumulative and therefore not material. Defendants' Sixth Amendment rights to compulsory process were not violated. The Court **DIRECTS** the Clerk to provide a copy of this Order to all Parties.

**IT IS SO ORDERED.**

Newport News, Virginia
September 28, 2018

Raymond A. Jackson
United States District Judge

7